**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela A Spendlove, | No. CV-23-08084-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

In the summer of 2013, Claimant Pamela A. Spendlove filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income, alleging a disability beginning June 22, 2012. (AR. 82, 93.) The Social Security Administration denied her claims initially and again on reconsideration. (AR. 115, 127.) After an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision. (AR. 1108.) The Appeals Council denied review of the decision, making the ALJ's finding the final decision of the Commissioner of the Social Security Administration ("Commissioner"). (AR. 1.)

In July 2018, Spendlove appealed the decision to this Court, and the Court remanded the case for further agency proceedings. *Spendlove v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at *1, *8 (D. Ariz. July 31, 2018). On remand, a different ALJ issued an unfavorable decision. (AR. 984.) Spendlove appealed, and the Appeals Council remanded the claim for further agency proceedings. (AR. 971–

77.) On remand, yet another ALJ issued an unfavorable decision, finding that Spendlove was not disabled from her alleged onset date through the date of her return to full-time work on March 1, 2022. (AR. 1011–46.) The Appeals Council denied review of that decision, making the ALJ's finding the final decision of the Commissioner. (AR. 943–51.) Spendlove seeks review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.      Standard**

To determine whether a claimant is disabled, the ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof for the first four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically considered disabled. Otherwise, the ALJ moves to the fourth step, where he assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not so capable, as the fifth and final step, the ALJ must determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

This Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and

citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The harmless error doctrine applies to the Court's review of an ALJ's decision. Thus, the decision "need not be remanded or reversed if it is clear from the record that the error is 'inconsequential to the ultimate nondisability determination.'" *Jones v. Comm'r of Soc. Sec. Admin.*, 460 F. Supp. 3d 867, 871 (D. Ariz. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

**II.     Analysis**

Spendlove raises two issues for the Court's consideration: (1) whether the ALJ properly evaluated her the opinion of her treating psychiatrist, Mohamed Ramadan, M.D., and (2) whether the ALJ properly evaluated Spendlove's symptom testimony.[1]

**a.  The ALJ did not properly evaluate Dr. Ramadan's opinion.**

For claims filed before March 27, 2017, like Spendlove's, the ALJ must accord "controlling weight" to a treating doctor's opinion where the opinion is medically approved, supported by diagnostic techniques, and consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ must provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted treating or examining doctor's opinion. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). But the ALJ may reject a treating or examining doctor's opinion that is contradicted by another doctor if he provides "specific and legitimate" reasons for doing so that are supported by substantial evidence. *Id.*; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

---

[1] Spendlove focuses her briefing on the ALJ's treatment of her mental health issues, rather than her physical health issues, so the Court does not address parts of the ALJ's order dealing with Spendlove's physical health issues.

and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Here, the ALJ did not afford specific weight to the opinion of Dr. Ramadan, who has treated Spendlove since her alleged onset date, but it is apparent from the decision the ALJ discounted it. (*See* AR. 1031.) Dr. Ramadan opined that Spendlove (1) "may have difficulty" with memorization and understanding instructions; (2) is unable to concentrate and maintain attention; (3) cannot maintain social interactions; and (4) may not be able to respond to work demands. (AR. 942.) Based on these opinions and Spendlove's treatment history, he assessed that Spendlove would be off task more than thirty percent of an eight-hour workday, absent from work five days a month, unable to complete an eight-hour workday more than five days a month, and inefficient in her job performance more than fifty percent of the time. (AR. 1980.) Having determined that there was a contradiction between Dr. Ramadan's opinion and other doctor's opinions, the ALJ purported to give specific and legitimate reasons to discount Dr. Ramadan's opinion. (AR. 1030–31.)

The ALJ pointed out that some of Dr. Ramadan's report was vague and equivocal, opining that Spendlove *may* have difficulty memorizing and understanding instructions and that she *may* not be able to respond to work demands. (AR. 942, 1030–31.) Yet Dr. Ramadan assessed serious and work-preclusive limitations. Such uncertainty cannot support Dr. Ramadan's assessed limitations, so it is a specific and legitimate reason to discount those opinions.[2] The ALJ also properly noted that Dr. Ramadan's opinion that Spendlove cannot maintain social interactions was contradicted by other clinicians who found her to be "exhibiting good social skills and interacting well during the relevant

---

[2] This finding is in line with the Court's previous decision in this matter, where it concluded that Dr. Ramadan's uncertainty was a specific and legitimate reason to reject that portion of the opinion. *Spendlove*, 2018 WL 3633744, at *3–4.

period." (AR. 1031.) Substantial evidence supports that finding. (*See, e.g.*, AR. 909, 913, 920, 924.)

The previous ALJ's evaluation of Dr. Ramadan's opinion was insufficient because the ALJ failed to address another section of Dr. Ramadan's report, where he opined that Spendlove was unable to concentrate and maintain attention. *Spendlove*, 2018 WL 3633744, at *3. Because this statement was definitive and could potentially support the assessed limitations, the Court held that the ALJ was required to give a specific and legitimate reason not to afford it any weight. *Id.* In the decision at issue here, the ALJ stated that treatment notes show that Dr. Ramadan found Spendlove typically exhibited no concentration or attention deficits. (*See, e.g.*, AR. 855–56, 880–81, 883–84, 888–89, 891–92, 1941, 1943, 1949, 2779.) But these instances were mere cherry-picking and are not supported by substantial evidence. *Moreno v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00319-PHX-DLR, 2023 WL 4926258, at *4 (D. Ariz. Aug. 2, 2023) ("While it is the ALJ's province to weigh the evidence, . . . he cannot 'cherry-pick' evidence to support an unfavorable decision." (citation omitted)). At other appointments, Dr. Ramadan noted problems with Spendlove's attention and concentration. (AR. 631–33, 636, 638, 1944, 1949–50, 1952–53, 1967, 1970.)

Further, other medical evidence in the record also supports Dr. Ramadan's opinion. At several appointments, Spendlove was noted to have a blunted affect and a depressed mood. (AR. 2427, 2429, 2433.) Spendlove reported "raging" and "crying" and was noted as being "tearful" at many appointments. (AR. 461–62, 638, 880, 1952–53, 2339, 2356.) At one appointment Spendlove appeared angry, paranoid, anxious, and agitated. (AR. 895.) The logical implication of these findings is that Spendlove would be distracted and unable to concentrate during a workday, consistent with Dr. Ramadan's opinion.

The ALJ briefly addressed other evidence in the record he asserted contradicted Dr. Ramadan's opinion: Spendlove's daily activities and work experience. (AR. 1031.) The ALJ may properly consider and discount a treating doctor's opinion based on such contradictions. *Ford*, 950 F.3d at 1155 ("A conflict between a treating physician's opinion

- 5 -

and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."); *id.* at 1156 ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled.") Spendlove has held several different jobs, including a seasonal position as a store associate at a Spirit Halloween, a merchandiser, and a floor manager at a gas station. (AR. 1018, 1024, 1079, 1083.) But merely stating, as the ALJ did, that the claimant has had numerous jobs since the alleged onset date is not a specific and legitimate reason to reject a work-preclusive assessment. The ALJ failed to explain *how* Spendlove's work history contradicts the assessed limitations. At all these jobs, she testified to frequent absenteeism that, in several cases, led to her termination. (AR. 48, 289, 300, 460, 1079–84, 2952, 2957–58.) In fact, Spendlove testified she has called out six times in two months at her current job and still frequently has panic attacks during her shifts. (AR. 2962–63.) She also shared that she has been reprimanded for her inability to remain on task and has to be reminded of her job tasks frequently. (AR. 2963–64.) Simply having had several odd jobs over the course of ten years does not negate a treating doctor's opinion; there must be some true inconsistency between the employment and the doctor's assessment, highlighted and explained by the ALJ.

Similarly, the ALJ stated Spendlove's daily activities "suggest a greater level of functioning." While that may be true, the ALJ did not meet his burden. He did not point to specific activities and connect them to the clinical findings in any meaningful way. It is thus unclear on the record *which* daily activities were inconsistent with Dr. Ramadan's opinion and *how* they would contradict the limitations Dr. Ramadan assessed.

The ALJ does not adequately explain how some "fair" or "good" attention and concentration findings, during short appointments once every three months, nullify Spendlove's attention-deficit/hyperactive disorder, depression, and anxiety diagnoses and their resulting effects on her ability to concentrate and maintain attention. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[O]bservations of cognitive functioning during therapy sessions do not contradict reported symptoms of depression and social anxiety."). Dr. Ramadan's opinion is consistent with Spendlove's testimony about her

1  difficulty maintaining concentration and her frequent absenteeism at work. (AR. 48, 61,
2  63–64, 289, 300, 460, 1079–84, 2952, 2957–58.) His opinion is also consistent with
3  Spendlove's history of frequent panic attacks. (AR. 888–89, 2963.) The longitudinal record
4  demonstrates that Spendlove continued to deal with debilitating mental health issues
5  throughout the entire ten-year period at issue, which Dr. Ramadan observed and treated the
6  entire time. Dr. Ramadan's limitations accounted for Spendlove's anxiety and panic
7  disorders and depression, and the ALJ failed to give specific and legitimate reasons why
8  those diagnoses and Dr. Ramadan's treatment history could not account for the limitations.

9  The ALJ did not properly evaluate Dr. Ramadan's testimony. This error was
10 harmful because the limitations Dr. Ramadan assessed are work preclusive and would have
11 changed the outcome in this case. Thus, the ALJ's error in evaluating Dr. Ramadan's
12 testimony warrants reversal.

**b. The ALJ's erred in evaluating Spendlove's symptom testimony.**

14 Proper evaluation of a claimant's symptom testimony requires the ALJ to perform
15 a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ
16 evaluates whether the claimant has presented objective medical evidence of an impairment
17 that "could reasonably be expected to produce pain or other symptoms alleged."
18 *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2017). If the claimant presents such
19 evidence and absent evidence of malingering, the ALJ may reject the claimant's testimony
20 as to the severity of her symptoms "only by offering specific, clear and convincing reasons
21 for doing so." *Id.*; *Garrison*, 759 F.3d at 1015.

22 The Court will uphold the ALJ's decision so long as he has provided legally
23 sufficient reasons for rejecting the claimant's testimony, even if the ALJ did not "clearly
24 link his determination to those reasons." *Lewis*, 236 F.3d at 512. "Even when an agency
25 explains its decision with less than ideal clarity, a reviewing court will not upset the
26 decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't*
27 *of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quotations and citation omitted).

Here, Spendlove testified that she often experiences intense anxiety and is unable to focus or concentrate on tasks. (AR. 2958.) In fact, she stated that she suffers panic attacks daily. (AR. 2963.) These attacks generally last from twenty to thirty minutes. (*Id.*) She experiences both short- and long-term memory problems. (AR. 2964.) She further testified that she cannot work full time because of poor concentration and memory, anxiety, and an inability to be around others. (AR. 2964–65.)

The ALJ found that Spendlove's symptom testimony was inconsistent with the objective medical evidence, her positive response to treatment, her reported daily activities, and other evidence in the record. Consideration of each of these factors in evaluating symptom testimony is appropriate. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

The ALJ properly considered Spendlove's improvement with treatment. Spendlove went to therapy and counseling and experienced improvement in her mental health. (*See, e.g.*, AR. 453, 752, 776.) Spendlove took medication for her anxiety that relieved her symptoms and decreased the frequency of her panic attacks. (*See, e.g.*, AR. 400, 758, 770, 1940, 1943.) Even such "gradual improvement" in symptoms can undercut the claimant's testimony. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (gradual improvement in claimant's symptoms with prescribed medication was a specific, clear, and convincing reason to reject claimant's symptom testimony). The ALJ permissibly discounted her testimony to the extent it was inconsistent with her improvement with treatment.

The ALJ erred, however, in discounting the symptom testimony to the extent he deemed it inconsistent with the objective medical evidence and Spendlove's daily

activities. The ALJ observed that at mental status examinations Spendlove was cooperative, alert, oriented, and adequately groomed. (AR. 855–56, 880–81, 883–84, 888–89, 891–92, 1941, 1943, 1949, 2779.) He also noted that she had "good impulse control, and some evidence of impaired attention and concentration along with intact attention and concentration." (AR. 1027.) It is unclear how these findings contradict Spendlove's testimony, and the ALJ does not explain his reasoning.

The ALJ also found that Spendlove's daily activities were also inconsistent with her allegations of pain. While an ALJ may consider a claimant's daily activities in evaluating her symptom testimony, the ALJ "must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often by consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "[A]n ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant 'spend[s] a *substantial* part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Spendlove v. Comm'r of Soc. Sec. Admin.*, 2018 WL 3633744, at *6 (quoting *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)). Over the entire ten-year period of disability, Spendlove has engaged in some daily activities that have arisen out of necessity: she paid her bills, grocery shopped, helped her son with schoolwork, moved houses, and prepared simple meals. (AR. 1027, 1086–93.) The activities listed don't contradict Spendlove's claims of disability, nor did she spend a substantial part of her day doing them. And she had great difficulty performing many of these tasks: she set reminders to pay her bills; she often left the grocery store forgetting much of what she needed or brought her son with her to tell her what to buy; she Googled answers to her son's homework questions and still had trouble helping him. (AR. 1086–93.)

The ALJ put great emphasis on the amount that Spendlove babysat her grandson, which she testified that she did frequently in 2020. (AR. 1089–90.) He did find that she

spent much of her day babysitting (during the year-long period she babysat). (AR. 1024.) The ALJ, however, did not identify any specific inconsistencies between Spendlove's babysitting and her alleged symptoms. He merely noted that her daily activities suggested she was "not nearly as limited as alleged." (AR. 1027.) He offered no explanation about the transferability of babysitting skills to the workplace. Thus, the ALJ erred in evaluating the consistency of Spendlove's symptom testimony with her daily activities.

### III. Appropriate Remedy

Spendlove requests that the Court apply the credit-as-true rule and remand her case for a computation of benefits, rather than reversing for further proceedings. (Doc. 14 at 23.) Generally, "ordinary remand"—that is, remand for further agency proceedings—is the appropriate remedy when an ALJ makes legal error in his decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Remand for an award of benefits is appropriate only in exceptional circumstances where further administrative proceedings would not serve any useful purpose, and the record has been fully developed. *Id.*; *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [for an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The Court's authority to authorize a remand for benefits is discretionary. *Treichler*, 775 F.3d at 1100.

Here, the circumstances that would justify a remand for benefits are not present. Additional proceedings can remedy the defects present in the ALJ's decision. The problem is not that there is not substantial evidence in the record suggesting Spendlove may not be disabled, but that the ALJ did not properly evaluate the evidence. Moreover, the Court remains skeptical that a disability finding is appropriate, and thus, only ordinary remand is appropriate. *See Garrison*, 759 F.3d at 1021 (remand appropriate when evaluation of record as a whole creates "serious doubt" that claimant is disabled).

**IT IS ORDERED** that the November 1, 2022 decision of the ALJ (AR. 1011–46.) is **REVERSED** and **REMANDED** for further proceedings. The Clerk of the Court is directed to enter judgment accordingly and terminate the case.

Dated this 3rd day of January, 2025.

Douglas L. Rayes
Senior United States District Judge

- 11 -